## AMERICAN BONDING COMPANY OF BALTIMORE v. MORROW.

### Opinion delivered July 23, 1906.

1. SURETY COMPANY—CONSTRUCTION OF BOND.—The bond of a surety company, when doubtful or ambiguous, must be given the strongest interpretation which it will reasonably bear against the surety company. (Page 54.)

2. SAME—LIMIT OF LIABILITY.—Where the original bond of a surety company provided that it should be renewable annually by a renewal receipt issued by the surety company, but that the liability of the company should not be cumulative, the total liability of the company after several renewals is limited to the amount named in the original bond. (Page 54.)

3. SAME—STIPULATION AS TO AUDITING OF ACCOUNTS.—Where an application for renewal of a cashier's fidelity bond stipulated that his accounts would be audited monthly, it was not intended that the examination should be made on precisely the same date of each month, but only that the examination should take place at some time during each month. (Page 54.)

4. SAME.—A stipulation in an application for renewal of a bank cashier's fidelity bond that his accounts would be examined monthly by the auditing board of the bank did not call for an examination by a committee of expert accountants, but only such an examination as the auditing board was capable of making. (Page 55.)

5. SAME—WARRANTY.—A statement in an application for renewal of a bank cashier's fidelity bond that such cashier was not "engaged in any other business or employment than the bank's service," made a warranty by the terms of the bond, will be deemed to refer to important and material matters calculated to affect the risk, and not to unimportant ones which have no effect or bearing upon the risk. (Page 55.)

80—4

Appeal from Prairie Chancery Court; *John M. Elliott*, Chancellor; reversed.

## STATEMENT BY THE COURT.

The American Bonding Company of Baltimore is a foreign corporation doing business in the State of Arkansas as a surety company, and on August 31, 1900, executed to the Bank of DeVall's Bluff, of DeVall's Bluff, Arkansas, a surety bond in the sum of $5,000, undertaking to indemnify said bank against any loss sustained on account of any larceny or embezzlement committed by its cashier, G. C. Strong, during the term of one year commencing on the first day of September, 1900. The bond contained the following among other conditions and stipulations, viz.:

"This bond shall not lapse at the end of the above if it shall be continued in force by a renewal receipt or receipts executed by the surety, but shall continue in force for the term or terms of such renewal. The liability of the surety, however, shall not be cumulative.

"That all the representations made by the employer, his or its officers, to the surety are warranted by the employer to be true; that the employee has not, to the knowledge of the employer, his or its officers, been in arrears or a defaulter in the position covered by this bond, or in any other position, and that the employer, his or its officers, upon becoming aware of the employee gambling, speculating or committing any disreputable, lewd or unlawful act will immediately notify the surety in writing.

"That the surety's liability hereunder shall cease immediately as subsequent acts of the employee from and after discovery by the employer, his or its officers, if any default hereunder on the part of the employee."

This bond was issued upon a written application signed by officers of the bank, containing various statements in response to questions propounded, the truth of which were declared to be warranties by the applicant.

Renewal receipts were subsequently issued by the surety, extending the period of the suretyship from September 1, 1901, for one year, and from September 1, 1902, for another year.

The renewal receipts were in the following form (omitting caption) :

"In consideration of the sum of twenty-five dollars, the American Bonding & Trust Company, of Baltimore City, hereby guaranties the fidelity of George C. Strong in favor of Bank of DeVall's Bluff from the first day of September, 1901, to the first day of September, 1902, in the same amount, in the same position, and subject to all the covenants and conditions set forth and expressed in the surety bond No. 44228 of this company, heretofore issued on the first day of September, 1900."

The last renewal receipt extending the bond for one year from September 1, 1902, was issued upon a written application signed by the president of the bank and containing the following among other questions and answers, viz.: "4. (a) Has applicant uniformly given satisfaction in his personal conduct and habits?" Answer. "Yes." "(b) Has he kept his accounts correctly and made proper settlements of all cash and securities entrusted to his care?" Answer. "Yes," "(c.) Have you any knowledge or any information or are you aware of any habit of the applicant or of any circumstances unfavorably affecting the risk to the surety on the bond applied for? If so, state particularly." "Answer. "No." "5. Is he now or has he been from any cause indebted to the bank or its officers? If so, give particulars, stating amount, how incurred, and how payment is secured." Answer. "Does not owe the bank or its officers." "6. Is he now or about to be engaged or entrusted in any other business or employment than the bank's service?" Answer. "No." "11. In case of applicant handling cash or securities, how often will the same be examined and compared with the books, accounts and vouchers and by whom?" Answer. "The auditing committee, monthly." "12. (a). At what date and by whom were the applicant's books and accounts (including cash, securities and vouchers, if any) inspected and examined?" Answer. "August 15, by auditing committee: W. J. Wilkins and J. I. Booe." "(b): Were they at that time in every respect correct and proper, securities and funds on hand to balance?" Answer. "They were."

The plaintiff, W. H. Morrow, as receiver of the bank of DeVall's Bluff, brought suit at law against said company to recover the sum of $11,038.56, alleged to have been misappropriated

and used by the cashier Strong (which said misappropriation, it is alleged, amounted to larceny or embezzlement) during the said three years covered by said bond and the several renewals thereof. The defendant answered, and the cause was transferred to the chancery court upon the motion of defendant, alleging "that the transactions and defalcations, if any, as charged against said Strong in the complaint embraced money and various items of account extending over a period of three years, and are of such an intricate nature and so intermingled upon the books and among the papers of the said bank that it is impossible to ascertain accurately the amount of defalcation, if any, or the amount due from said Strong to said bank without the aid of a master in chancery."

Said defendant, in its answer, denied that Strong, by acts amounting to larceny or embezzlement, had appropriated the funds of the bank; alleged untruthfulness of the answers to questions in the several applications for the bond, and renewal receipts were set forth as breaches of the contract which released the surety from liability. It is also set forth as a defense that, according to the terms of the bond, the surety is in no event liable for an amount in excess of $5,000.

On final hearing the chancellor found that Strong's defalcation during the period named in the bond was $1,150.50; during the period named in the first renewal receipt, $4,066.72, and during the period of the second renewal receipt, $5,851.34, and rendered a decree against the surety company for $10,068.06, from which decree an appeal is prosecuted.

*Ratcliffe & Fletcher,* for appellant.

1. All the answers to the questions propounded were warranties, compliance with which were made conditions precedent to any liability on the part of the company, and the burden is upon the receiver to show performance. 38 L. R. A. 297. It is not a question of substantial compliance. The bonding company is entitled to a strict compliance with the conditions and warranties before recovery can be had. 53 Ark. 353; 58 Ark. 565; *Ib.* 277; *Ib.* 528; 65 Ark. 240; 22 Wall. 47; 103 Fed. 427; 95 Fed. 111. Being purely a matter of contract, if the bank has failed to comply with its contract, there can be no recovery in this suit. 183 U. S. 402; 125 Fed. 887; 99 Fed. 242; 126 Fed. 89.

2. The court erred in holding that the bond and renewals thereof constituted three distinct bonds, covering as many periods of time. It distinctly provides that "the liability of the surety shall not be cumulative." The renewal bond was a new contract only in so far as it extended the indemnity of the original bond to another year; but there was but one bond with one penalty. 75 S. W. 1076.

*M. J. Manning,* for appellee.

1. Statements or agreements of the insured which are inserted or referred to in a policy are not always warranties. Whether they be warranties or representations depends upon the language in which they are expressed, the apparent purpose of the insertion or reference, and sometimes upon the relation they bear to other parts of the policy or application. All reasonable doubts as to whether they are warranties or not should be resolved in favor of the assured. 58 Ark. 533. The statements made by the officers of the bank were made in good faith, and were substantially correct. There was no agreement that the declaration was a part of the contract, or that its truth was a condition precedent to recovery, but that the employee had not, to the knowledge of the employer, his or its officers, been in arrears, or a defaulter. 103 Fed. 431. Conditions on which forfeiture of the contract is claimed being construed strongly against the insurer, the burden is upon it to clearly establish its defense in this case. 41 Fed. 506; 51 Fed. 723; 111 U. S. 341; 63 Fed. 48. Statements made on knowledge or knowledge and belief are not untrue unless shown to have been knowingly false. 100 U. S. 614; 95 U. S. 673. The auditing committee being composed of men of reasonable ability and business experience, the bank was not required to employ expert bank accountants to make the examinations. 68 Fed. 464; 80 Fed. 766; *Ib.* 773.

McCULLOCH, J., (after stating the facts.) 1. The initial question for determination is as to the amount of appellant's liability, if any, on the bond and the two renewal receipts—whether said writings constituted three separate obligations to indemnify the assured in the sum of $5,000 each against loss accruing during the respective years, or whether they constituted a single liability for the sum of $5,000 extending over the periods

covered thereby, and indemnifying the assured against loss only to the extent of that sum for the whole period.

It is now well settled that the bond of a surety company, like any other insurance policy, is to be most strongly construed against the insurer. The language of the bond is that selected and employed by the insurer, and, when doubtful or ambiguous, must be given the strongest interpretation against the insurer which it will reasonably bear. *Anderson* v. *Fitzgerald,* 4 H. L. Cas. 484; *American Surety Co.* v. *Pauly,* 170 U. S. 133; *Guarantee Co.* v. *Mechanics', etc., Co.,* 183 U. S. 402; *Supreme Council etc.,* v. *Fid. & Cas. Co.,* 63 Fed. 48; *Remington* v. *Fid. & Dep. Co.,* 27 Wash. 429.

The language of these instruments is not susceptible of any reasonable interpretation other than that it was intended to extend the liability over the period of the renewal, but to limit the total liability for the whole period of the renewal contract to the amount named. It is so expressly stipulated in the bond. There is no ambiguity about it. It is plainly stipulated that the bond shall not lapse·at the end of the time if renewed, but that "the liability of the surety, however, shall not be cumulative." What else can this stipulation mean? This construction is, strengthened when we consider all the other terms and conditions of the bond, and it is obvious that only a total liability of $5,000 was contracted. The Supreme Court of Tennessee placed this construction upon a similar bond. *First Nat. Bank* v. *U. S. Fidelity & Guar. Co.,* 75 S. W. 1076. The learned chancellor held that the bond and renewal receipts constituted three separate bonds, covering three separate and distinct periods. In this he erred.

2. Was there a breach, on the part of the bank, of any of the conditions of the bond which released the surety?

The application for the last renewal contained the following question and answer, viz.: "In case of applicant handling cash or securities, how often will the same be examined and compared with the books, accounts and vouchers, and by whom?" Answer. "The auditing committee, monthly." It is claimed that this condition was not performed during the period covered by the renewal. We think the evidence is sufficient to sustain a finding that the examinations were made by the auditing committee

monthly during that period. It is not claimed by the members of the committee that the examinations were made at precise intervals of one month. On the contrary, some of them state that it was deemed advisable to examine at irregular intervals, or rather upon irregular dates in each month. We do not think that the terms of the warranty, fairly and reasonably construed, required any more than that. Certainly it was not meant that an examination should be made on precisely the same date of each succeeding month, but that an examination should be made at some time during each month. We think this is shown to have been done during the last year.

It is argued that the examinations made by the auditing committee from time to time were not sufficiently searching and accurate to discover defalcations which ought to have been discovered, and that for this reason the surety company was released from liability. The members of the committee were not expert accountants, and appear to have made examinations in good faith with the purpose of fulfilling their duty to the bank. The terms of the bond and the alleged warranty in the application do not call for an examination to be made by a committee of expert accountants. It was only provided that the examinations should be made by the auditing committee of the bank directors. This provision contemplated no more than just what was done—an examination by a committee of men selected from the ordinary business avocations, reasonably capable of comprehending the condition of the accounts of the bank. It appears that the cashier, Strong, successfully secreted his defalcations from these men, notwithstanding the fact that they made a reasonably diligent investigation from month to month. The fact that he did succeed in thus hiding his wrongdoing for a time does not demonstrate that the members of the committee failed to perform their duty. If that process of reasoning should be followed out, it would necessarily defeat the objects of the bond. It was from just such a condition of affairs that the bank sought indemnity. As has been well said, "an employer would need no insurance against that close and relentless vigilance which makes stealing impossible." Hammond, J., in *Guarantee Co.* v. *Mechanics' Bank,* 80 Fed. 766.

It is shown by proof that, during the life of the bond and

renewals, Strong acted as secretary of a building and loan association, and also that he was engaged in the fire insurance business, and this is put forth by appellant as grounds of forfeiture on account of the negative answer to the question in the application whether the employee was "now or about to be engaged in other business or employment than the bank's service." The proof shows that he wrote a little fire insurance, and was secretary of the local board of directors of a Little Rock building and loan association doing business at DeVall's Bluff, but that none of those engagements interfered with his work at the bank—that he attended to that work before or after banking hours. The parties to an insurance or indemnity contract may, by express stipulation, declare warranties of things apparently trivial and unimportant to be material, but such things will not be deemed to be material unless made so by express stipulation. Unless otherwise expressly provided, warranties will be deemed to refer to important and material matters calculated to affect the risk, not to unimportant ones which have no effect or bearing upon the risk. *Franklin Life Ins. Co.* v. *Galligan,* 71 Ark. 295; *Providence Life Assurance Society* v. *Reutlinger,* 58 Ark. 528; *Home Mutual Life Assn.* v. *Gillespie,* 110 Pa. St. 84; *Cushman* v. *U. S. Life Ins. Co.,* 70 N. Y. 72; *Wilkinson* v. *Connecticut Mutual Life Ins. Co.,* 30 Iowa, 119. The question propounded in the application manifestly had reference to some business or employment calculated to interfere with Strong's duty to the bank or to increase the risk. It had no reference to the trivial or incidental duties of some other business or employment which did not impose a tax upon the time due the bank or call for the investment of some capital. The other engagements of Strong were too trivial and unimportant to be deemed to have been in contemplation of the parties when the truth of the answers were warranted.

Upon consideration of the whole case, we are of the opinion that the proof does not establish any grounds of forfeiture or breach of warranties or conditions on the part of the assured, and that the appellant is liable for the defalcation which occurred during the period of the last renewal, to the extent of the amount of penalty of the bond. Those occurring during the preceding periods need not be discussed.

The decree is therefore reversed, and a decree will be entered

here against appellant for the sum of $5,000, with interest from August 21, 1903, together with the costs of the court below.

It is so ordered.