FEDERAL UNION SURETY COMPANY *v.* McGUIRE.

Opinion delivered February 16, 1914.

1. PRINCIPAL AND SURETY—BOND—HOW CONSTRUED.—Where the language of a surety bond is selected by the insurer, it will be given the strongest interpretation which it will reasonably bear in favor of the insured. (Page 378.)

2. SURETYSHIP—AGREEMENT OF INSURED—BREACH.—Where a surety bond, given for the proper building of a house, recited that the insured retain 10 per cent of the contract price, and the contract between the insured and contractor provided only for the manner and amount of payments, the insured will not be held to have committed a breach of his agreement with the surety, where he retains the 10 per cent, but does not retain the full amount of the last payment stipulated in his agreement with the contractor. (Page 378.)

3. SURETYSHIP—DEFAULT OF PRINCIPAL—RIGHT OF INSURED.—After the default of the principal, who contracted with the appellee to build for him a house for a certain sum of money, and the appellee give notice to the surety on the bond of the default, where the surety

failed to respond, the appellee had the legal right to proceed with the completion of the building according to the contract. (Page 378.)

4. SURETYSHIP—DEFAULT OF PRINCIPAL—EVIDENCE—HARMLESS ERROR.— In an action on a building contractor's bond, it is error to admit evidence, that after the contractor's default a stranger, pretending to act as agent for the defendant, told plaintiff to go ahead and finish the work, when it did not appear that the stranger was an agent of the defendant, but the error held harmless. (Page 378.)

5. PRINCIPAL AND SURETY—LIABILITY OF SURETY—BUILDING CONTRACTOR'S BOND.—A surety on a building contractor's bond is liable for bills incurred by the contractor and paid by the obligee before the expiration of the time for filing liens. (Page 378.)

6. PRINCIPAL AND SURETY—BUILDING CONTRACTOR'S BOND—PAYMENTS— RESERVATION.—Where a building contractor's bond requires that the obligee shall retain part of a contract price, the requirement does not apply to payments made after default by the contractor, in completing the building and discharging liens. (Page 379.)

Appeal from Phillips Circuit Court; *Edwin Bevens,* Special Judge; affirmed.

*Moore, Vineyard & Satterfield,* for appellant.

1. It needs no citation of authorities to show that the court erred in permitting the witness McGuire to read to the jury a copy of a letter purporting to have been written to the appellant, without requiring a proper foundation for the introduction of a copy instead of the original letter.

2. It was error to permit this witness to detail transactions and conversations between himself and a party claimed by him to have been the agent of appellant. One who deals with a special agent is bound to ascertain the nature and extent of his authority, and must know before he deals with him that he is in fact what he represents himself to be. 81 Ark. 202; 74 Ark. 557; 62 Ark. 33. The authority of an agent can not be established by his own declarations. 92 Ark. 315; 84 Ark. 373.

3. There is no evidence showing that there was ever any disagreement or objection made to any of the work done or materials put in place by the contractor. After his death another contractor arbitrarily ordered certain parts of the work taken out and new work put in.

In the absence of fraud or such gross mistake as would necessarily imply bad faith, appellee had no right to take out work already done and have other work done in lieu thereof, at the expense of appellants. 48 Ark. 522; 83 Ark. 136.

4. The act of the appellee in paying out funds in excess of the amount authorized by the contract, was a material breach of the contract which should operate as a release of the sureties on the bond. 69 Ark. 126; 63 Ark. 473; 79 Ark. 523; 89 Fed. 925; 45 Ala. 535.

*P. R. Andrews,* for appellee.

1. The failure of the appellee to retain $532 for the last payment as specified in the contract was an immaterial departure from the contract and did not discharge the surety. 86 Ark. 217; 89 Ark. 480.

2. The contracts of surety companies are construed as contracts of insurance. They are not regarded as favorites of the law entitled to stand upon the strict terms of their obligations, but their contracts will be reasonably construed to give effect to the protective purposes of their execution. 73 Fed. 95; 133 S. W. 365; 80 Ark. 54; 32 Cyc. 306, and cases cited; 112 Minn. 288; 33 L. R. A. 513, and notes. When doubtful or ambiguous, the bond of such a company will be construed against the company. 170 U. S. 133; 183 U. S. 402.

McCULLOCH, C. J. This in an action instituted by appellee against appellant, a surety company, to recover on a bond executed by the latter to stand surety for one James Loveland for the performance of his contract with appellee for the construction of a building in the city of Helena, Arkansas.

According to the terms of said contract, Loveland undertook to furnish material and build the house for appellee at the stipulated price of $4,132, to be paid as follows:

When the foundation is in and the framing is up, excepting the rafters......................$1,000
When the storm sheathing and roof is on......... 800

When brick work is finished and the outside is fin-
  ished, except paint........................ 1,000
When the windows are in and plastering is on....  800
When the contract is completed, the balance of....  532
                                                 ─────
                                                 $4,132

The contract contained the following stipulation:

"In case there should be any disagreement between the two parties to this contract, each agrees to submit the same to arbitration, each to select a man, and if these fail to agree, they are to agree on a third man, and the decision of these three shall be final, should arbitration become necessary, it may be had at any time, before final settlement. The cost of arbitration, if any, to be paid by the parties deemed in fault."

The bond contained a stipulation to the effect that in case of default on the part of the principal, a written statement or notice thereof should be given by the obligee to the surety within ten days after such default, and that the surety should then have the right to complete the performance of the contract.

It also contained the following, among other stipulations:

"Fourth. That the obligee shall faithfully perform all the terms, covenants and conditions of such contract on the part of the obligee to be performed; and shall also retain that proportion, if any, which such contract specifies the obligee shall or may retain of the value of all work performed or materials furnished in the prosecution of such contract (not less, however, in any event, than 10 per centum of such value), until the complete performance by the principle of all the terms, covenants and conditions of said contract on the principal's part to be performed. * * *"

"Sixth. That the obligee shall retain 10 per cent (10%) of the value of the work done and material supplied in the execution of such contract, until the completion of the same by said principal, and until the expiration of the time within which liens or notices of liens may

be filed, and until the legal cancellation and discharge of such liens, if any.''

Loveland died before the building was completed, and due notice of the default was given to appellant in the manner specified. Appellant failed to respond to the notice and appellee proceeded to complete the building. He sued for the sum of $1,308.11 and recovered the sum of $1,176.01, with interest. The items of appellee's claims consisted of unpaid bills for material and labor incurred by Loveland, which constituted liens on the building, and of cost of completing the building after Loveland's death.

The principal contention of appellant is that appellee violated the terms of the bond with respect to payments made to Loveland.

Appellee testified that he paid to Loveland all of the contract except the sum of $444.35, which he said he retained in compliance, as he understood it, with the provisions of the bond requiring him to retain ''ten per cent. (10%) of the value of the work done and material supplied in the execution of such contract.''

Appellant insists that the fourth section of the bond required the obligee to retain all of the last payment specified in the contract, in addition to ''ten per cent. of the value of the work done and material supplied,'' as specified in section 6. It is not so nominated in the bond.

The fourth section has no application to the contract between appellee and Loveland, for it contained no provision for the retention of any portion of ''the value of all work performed or materials furnished in the prosecution of the work.'' It merely specified when payments should be made, whereas the fourth section merely provided that the obligee must ''retain that proportion, if any, which such contract specifies the obligee shall or may retain of the value of all work performed or material furnished in the prosecution of such contract.'' In other words, that section of the bond fits a requirement which does not appear in the contract between appellee and Loveland and therefore has no application.

The language of the bond is that selected by the insurer and must be given the strongest interpretation which it will reasonably bear in favor of the insured. *American Bonding Co.* v. *Morrow,* 80 Ark. 49-54.

The evidence does not show that the amount retained by appellee was less than 10 per cent. of the value of work done and material furnished, as specified in section 6 of the bond. The fact that he did not retain as much as the final payment specified in the contract does not necessarily establish a breach on his part of the agreement to retain the proportion specified in section 6.

Another assignment of error is based on the admission of the following testimony adduced by appellee:

He testified that shortly after he notified appellant of Loveland's default, a gentleman (a stranger to him) called, and, pretending to act as appellant's agent, instructed him to get a contractor to go over the incompleted building and to "go ahead and complete the work."

This testimony was obviously inadmissible, for there is no evidence that the man in question was, in fact, the agent of appellant. But no prejudice could possibly have resulted from its admission, for the simple reason that after appellant had failed to respond to appellee's notice of the default, the latter had the legal right to proceed with the completion of the building according to contract. The alleged agreement with the putative agent added nothing to appellee's legal rights and therefore had no influence on the minds of the jury. The error was harmless.

Again, it is insisted that appellee had no right to pay the bills incurred by Loveland and charge them to appellant on the bond, because liens were not filed by the claimants as the statute provides.

The proof shows that the bills constituted liens on the building, and that the time for filing same had not expired; therefore appellant had the legal right to discharge the liens in order to protect his property from incumbrances. Nor did the requirement in the bond for

retention of part of the contract price have any application to payment made after Loveland's default. *Eureka Stone Co.* v. *First Christian Church,* 86 Ark. 212-217.

Appellee then had the legal right to pay the amount necessary to complete the building and discharge liens and charge the same against appellant's bond.

There are other assignments of error which we do not deem of sufficient importance to discuss.

Affirmed.

SMITH, J., dissenting.