United States Fidelity & Guaranty Co. v. Boley Bank & Trust Co.

"The marriage of a minor male ward, member of the Cherokee Tribe of Indians, of less than one-half Indian blood, does not of itself terminate his guardianship as to his allotment, nor abate the jurisdiction of the county court, and a guardian under such jurisdiction has authority to make a sale of said minor's allotted lands."

(4) Nowhere in the record does it appear that the question of the return of the consideration recited in the deeds to plaintiff in error was raised in the trial court, and plaintiff in error presents the question for the first time in his brief in this court. The undisputed testimony in the case shows that the consideration received by the allottee was a horse, a six-shooter, and $4 in money, and the record is silent as to whether this consideration was in fact returned. The question, not having been presented to the trial court and passed upon there, will not be considered by this court on appeal. *Tirey v. Darneal,* 37 Okla. 611, 132 Pac. 1087, and cases there cited.

It follows that the judgment of the trial court should be affirmed; and it is so ordered.

All the Justices concur, except KANE, C. J., absent and not participating.

---

## UNITED STATES FIDELITY & GUARANTY CO. v. BOLEY BANK & TRUST CO.

No. 3828.  Opinion Filed November 24, 1914.

(144 Pac. 615.)

1. INSURANCE—Renewal—Estoppel. Where a surety company has continued in force, from year to year, its bond indemnifying a bank against pecuniary loss by reason of the dishonesty of its cashier, upon representation by the bank that the books and accounts of such cashier were examined from time to time in the regular course of business and found correct, such surety company is estopped to deny liability by reason of the fact that such examinations were made at periods more extended than those provided for in the original application for the bond.

2. SAME—Fidelity Insurance—Examination of Accounts. Where the contract of a surety company indemnifying a bank against loss by reason of the larceny or embezzlement of its employee pro-

820 SUPREME COURT OF OKLAHOMA.

United States Fidelity & Guaranty Co. v. Boley Bank & Trust Co.

vides that the books and accounts of such employee shall be examined by the officers of said bank, it is charged with a knowledge of the race, intelligence, and business capacity of such officers, and is not entitled to have such books and accounts examined and reported upon by expert accountants.

(Syllabus by the Court.)

*Error from District Court, Okfuskee County; John Caruthers, Judge.*

Action by the Boley Bank & Trust Company against the United States Fidelity & Guaranty Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*J. B. Furry,* for plaintiff in error.

*John H. Burford, J. B. Patterson,* and *Frank B. Burford,* for defendant in error.

BLEAKMORE, J. This case presents error from the district court of Okfuskee county. The parties will be referred to herein as they appeared in that court.

On September 10, 1910, the Boley Bank & Trust Company filed its petition against the United States Fidelity & Guaranty Company praying judgment in the sum of $5,000 on a certain bond executed by defendant on the 13th day of September, 1907, given to indemnify plaintiff against such pecuniary loss as it might sustain by reason of the fraud or dishonesty of one W. H. Simms, cashier of plaintiff. It is alleged in said petition that the plaintiff, the Boley Bank & Trust Company, a corporation, was organized in the month of September, 1907, and opened and engaged in the banking business at Boley about the 1st of October following. The original and amended or supplemental petition sets up 35 distinct causes of action, in 30 of which it is alleged that Simms took into the accounts of the plaintiff certain promissory notes purporting to be signed by divers persons, and known by him to be forged and fraudulent, and entered the same upon the books of the plaintiff as *bona fide,* and withdrew and abstracted from the funds of the plaintiff under his custody and control the sums of money represented by such notes, and embezzled and appropriated and converted

the same to his own use and benefit. One cause of action alleges that Simms detached a certain collateral note in the sum of $1,000, and placed the same in the bank as an independent loan, and embezzled the amount represented thereby. In another cause of action it is alleged that Simms withdrew various amounts from the reserve account of plaintiff in other banks and embezzled the same. And in another count it is charged that Simms forged a check in the sum of $500 with the name of a depositor of the bank and appropriated the same to his own use. A copy of the bond sued on is set forth in full. The original bond covered a period from October 1, 1907, to October 1, 1908, and was renewed and continued from time to time until October 1, 1910. The total amount alleged to have been embezzled by Simms is $10,722.20. The amount of the bond was $5,000.

Demurrer to the petition being overruled, defendant answered admitting the execution of the bond and the extensions and renewals thereof. Defendant denies any liability upon said bond, for the reason that certain representations alleged to be warranties made by plaintiff in its application to secure the bond and the subsequent renewals and continuation thereof were not fulfilled by the plaintiff and were untrue. One of the stipulations in said bond is:

"Whereas, the employer has heretofore delivered to the company certain representations and promises relative to the duties and accounts of the employee, and other matters, it is hereby understood and agreed that these representations and such promises, and any subsequent representations or promise of the employer, hereafter required by or lodged with the company, are hereby expressly warranted to be true."

Again, it is stipulated in said bond:

"That any misstatement or suppression of facts in any claim made hereunder renders this bond void from the beginning. This bond will become void as to any claim for which the company would otherwise be liable, if the employer shall fail to notify the company of the occurrence of the act or omission out of which said claim shall arise immediately after it shall come to the knowledge of the employer; and the knowledge of a president, vice president, director, secretary, treasurer,

822     SUPREME COURT OF OKLAHOMA.

United States Fidelity & Guaranty Co. v. Boley Bank & Trust Co.

manager, cashier, or other executive officer shall be deemed under this contract the knowledge of the employer."

In the original application for the bond there appear the following questions and answers:

"4. How long has he been in your employ? And what salary does he receive? Just opening new bank. Twelve hundred dollars.

"5. To whom and how frequently will be account for his handlings. of funds and securities? Board of directors. Monthly.

"6. (a) What means will you use to ascertain whether his accounts are correct? (b) How frequently will they be examined? (c) By whom will they be examined? (a) Examination of books and accounts. (b) Monthly. (c) The executive committee.

"7. When were his accounts last examined? None."

In said application was incorporated:

"It is agreed that the above answers are to be taken as the basis of the said bond applied for, or any renewal or continuation of the same. * * *"

The cause was tried to a jury, who returned a general verdict against defendant in the sum of $5,000, and made special findings on each of the 35 causes of action.

There are 30 assignments of error, which are grouped and argued in defendant's brief under five heads: (1) Error of the court in overruling demurrer to petition and permitting the introduction of any testimony thereunder; (2) error in the admission of evidence; (3) error in overruling defendant's demurrer to the evidence; (4) error in the giving and refusing of instructions; (5) error in overruling motion for new trial. The contention that there was error in the overruling of the demurrer to the petition and in permitting the introduction of evidence thereunder is without merit. The evidence disclosed that the plaintiff bank in January or February, 1908, was closed for a period of two weeks by the Bank Commissioner of Oklahoma; that there was a shortage of $1,100 or $1,200; that this shortage was made good by the stockholders of the bank, and the capital stock reduced from $18,000 to $10,000, and the salary of Simms was reduced from $100 to $75 a month. There

is no testimony, however, to show that Simms was in any way responsible for this shortage; while, on the other hand, the evidence tends to show that it was occasioned by the defalcation of another employee. No notice of the fact of the closing of the bank, of the shortage, the reduction of its capital stock, or the reduction of the salary of Simms was given to defendant.

The indemnity bond in question was extended twice for a period of one year upon the execution by the bank of a certificate or application in the following language:

"To the United States Fidelity & Guaranty Company: This is to certify that the books and accounts of Mr. Wm. H. Simms were examined by us from time to time in the regular course of business, and we found them correct in every respect, all moneys or property in his control or custody being accounted for, with proper securities and funds on hand to balance his accounts, and he is not now in default. He has performed his duties in an acceptable and satisfactory manner, and no change has occurred in the terms or conditions of his employment as specified by us when the bond was executed."

It is contended by defendant that the answers to the questions contained in the original application for the bond and the subsequent certificate upon which the renewals and continuation thereof were secured are statements which must be absolutely true and literally complied with, and if the same are found to be untrue in any respect, or if there has been a failure to comply therewith in any particular, however immaterial, such will constitute a breach of express warranty and avoid the bond. It is urged that the reduction in the salary of Simms as cashier from $1,200 a year to $75 per month is such breach of warranty as will relieve defendant of any liability under the terms of its contract. It will be noted that at the time this representation was made the plaintiff had not engaged in the banking business, and the most that can be said of such statement is that it was a representation as to the intention of those having the management and control of the institution to pay him the sum of $1,200 a year. Failure literally to comply with this representation could in no way affect the defendant or cause any liability to arise upon its bond. The bank did not warrant that it would continue to pay to its cashier

$1,200 a year so long as he remained in that position. The inquiry in the application is, "And what salary does he receive?" and the answer, "Twelve hundred dollars." The record shows that, at the time of the opening of the bank, and for months thereafter, Simms received his salary at the rate of $1,200 a year. This representation, therefore, was literally true.

The evidence disclosed that, after the bank was taken over by the Bank Commissioner of Oklahoma and reopened, the books and accounts kept by Simms, as cashier, were not examined monthly, but at periods of longer duration, and in the regular course of business. It is also shown that the officers and directors of the bank who examined such books and accounts were not expert accountants, and, perhaps, for lack of education and experience in the banking business, not qualified to make a thorough examination and ascertain and report the true condition of its affairs. The testimony shows that all the stockholders, officers, and employees of the plaintiff bank were negroes.

It is contended that the representations made by the bank to secure the renewal and continuation of the bond: "That the books and accounts of Mr. Wm. H. Simms were examined by us from time to time in the regular course of business, and we found them correct in every respect, all moneys or property in his control or custody being accounted for, with proper securities and funds on hand to balance his accounts, and he is not now in default. He has performed his duties in an acceptable and satisfactory manner, and no change has occurred in the terms or conditions of his employment as specified by us when the bond was executed"—were false, and constituted a breach of the express warranties to such an extent as to render the bond void.

Defendant claims that, under the terms of its contract, it was entitled to an examination of the books and accounts of Simms monthly and by persons with knowledge of the banking business and competent in every respect to intelligently and accurately examine the same and make full report thereof. The first renewal certificate was dated on the 5th day of October, 1908, and the second in 1909, and in each of those certificates is the statement by the bank that the books and accounts of Simms

were examined from time to time in the regular course of business. That such books and accounts were examined is supported by the evidence and found to be true by the jury. It was upon these certificates that the bond was renewed and continued in force; and upon such representations made in such certificates considered as warranties the defendant must have relied in renewing and continuing its obligation. If it had desired a more frequent examination, it had the power to require the same; but, having continued its bond from time to time upon said representations and for the consideration paid by the bank, it is now estopped to deny liability on the ground that the examinations were made at periods more extended than those originally contemplated.

As to its contention that it was entitled to an examination by others than the officers of said bank who constituted its executive committee, who are referred to in the brief as "ignorant and incompetent negroes," it may be said that they were the persons with whom defendant contracted in the first instance, and it must be charged with a knowledge of their race, their intelligence and business capacity. The fact is notorious that Boley is a negro town in which no white man has ever lived or desired to live. It is not alleged nor attempted to be proved that defendant was induced to enter into the contract in question by reason of any fraud or misrepresentation as to the character or color of the other parties to the contract.

In *American Bonding Co. of Baltimore v. Morrow*, 80 Ark. 49, 96 S. W. 613, 117 Am. St. Rep. 72, it was said:

"The terms of the bond and the alleged warranty in the application do not call for an examination to be made by a committee of expert accountants. It was only provided that the examination should be made by the auditing committee of the bank directors. This provision contemplating no more than just what was done—an examination by a committee of men selected from the ordinary business avocations, reasonably capable of comprehending the condition of the accounts of the bank."

In the instant case, the officers of the bank in a short time after the embezzlements by their cashier occurred did discover

the same. Up to that time in this, as in other cases of a like nature, the employee had concealed his embezzlements, and the fact that the bank officials did not immediately discover that the institution was being robbed is not a fact in itself sufficient upon which to predicate the contention that they failed in the performance of their duty in examining his books and accounts, amounting to a breach of their alleged warranty in this regard.

"An employer would need no insurance against that close and relentless vigilance which makes stealing impossible." (*Guarantee Co. v. Mechanic's Bank*, 80 Fed. 766, 26 C. C. A. 146.)

In *Guthrie National Bank v. Fidelity & Deposit Co. of Md.*, 14 Okla. 636, 79 Pac. 102, it was said:

"It is true that the bank could have discovered Phillips' shortage if it had checked up the books of the bank with that object in view; but the suspicion of the officers of the bank had never been aroused. The books were checked up in the ordinary course of business, as such books usually are, and the bank had a right to assume that his accounts were kept correctly, in the absence of some fact tending to arouse suspicion that would be sufficient to put it upon inquiry."

An examination of the entire record convinces us that there was no error affecting the substantial rights of defendant committed by the court in the reception or rejection of the evidence.

The judgment of the trial court is affirmed.

All the Justices concur, except KANE, C. J., absent and not participating.