MORLEY, COMMISSIONER OF REVENUES *v.* McGUIRE.

4-9528                                                    242 S. W. 2d 112

Opinion delivered June 25, 1951.

Rehearing denied October 8, 1951.

*O. T. Ward,* for appellant.

*Barber, Henry & Thurman,* for appellee.

MINOR W. MILLWEE, Justice. Appellant, Dean R. Morley, Commissioner of Revenues of the State of Arkansas, brought this action against E. L. McGuire and appellee, National Surety Corporation of New York, seeking recovery of $1,000 allegedly due the State under a bond executed by McGuire, as principal, and appellee, as surety.

By agreement the case was tried before the circuit judge, sitting as a jury, upon certain stipulations including the *ex parte* statement of E. L. McGuire, who was a non-resident of the state at the time of the trial and was never served with summons in the suit. The trial court found for appellee and dismissed appellant's complaint as against the surety corporation.

E. L. McGuire was formerly a partner in Ark-La-Tex Cigarette Service, which maintained a place of business at Texarkana, Arkansas, and held a permit as a wholesale distributor of cigarettes in Arkansas pursuant to Ark. Stats., § 84-2303. McGuire, as partner, was appointed stamp deputy by appellant to handle the required cigarette tax stamps used in the partnership business. On July 13, 1949, McGuire executed and posted with appellant a bond in which appellee is surety, pursuant to the provisions of Ark. Stats., § 84-2314, which reads, in part: ''The Commissioner shall furnish to the distributors who have qualified by securing the permits as provided by section 3 (§ 84-2303) of this act stamps for the purpose of collecting the tax on cigarettes sold by them, provided that the Commissioner shall appoint and commission stamp deputies who shall be the owners of the wholesale firm or officers of corporations, when he deems it advisable, to handle these stamps and collect the tax on cigarettes before sales of cigarettes are made to the retailers. The Commissioner shall require from each such stamp deputy such official bond as may be by regulations prescribed.

''Stamp deputies shall be allowed such commission on account of sale of stamps and collection of the tax, and shall keep such records of sales and collections, and make such reports as the Commissioner may by regulations prescribe.

"Such stamp deputies shall be, within the scope of their authority, held to be agents of the Commissioner and accountable as such for any wrongful acts."

Section 84-2305(f) provides that every cigarette distributor shall, on or before the tenth of each month, furnish the Commissioner certain sales data and make payment of any taxes due for the preceding month.

On August 2, 8 and 16, 1949, McGuire, as stamp deputy, ordered and appellant shipped to him at Texarkana cigarette stamps in the total amount of $1,500. Under the terms of the bond appellee agreed to pay the State the amount of any loss of taxes (not in excess of $1,000) which McGuire should cause the State, ". . . through larceny, embezzlement, forgery, wrongful abstraction, willful misapplication, willful or careless improper stamping of tobacco and malt syrup products, willful or careless failure to attach stamps to tobacco products and malt syrup products, or any other fraudulent, neglectful, or dishonest act committed after noon of the 13th day of July, 1949, until noon of the 13th day of July, 1950 . . ." The parties stipulated that a balance of $1,000 remained due the State after crediting all payments made for the stamps purchased by McGuire for the partnership. Thus the sole question is whether appellee is liable on the bond in question for the $1,000 loss in taxes sustained by the State.

On June 22, 1950, E. L. McGuire, who then resided at Shreveport, Louisiana, gave attorneys for appellee a written statement of certain facts to which it was agreed at the trial that McGuire would testify, if present, with each party reserving the right to object to all immaterial and irrelevant matters. It does not appear that appellant's motion to strike certain parts of this statement was ever acted upon by the trial court. According to this statement, McGuire and two other persons were engaged as partners in the wholesale and retail sales of cigarettes by the use of vending machines located in the three-state area. One of the partners withdrew from the business prior to the execution of the bond in question. The business was continued, and a new partnership formed, by

McGuire and the other partner, S. E. Nielson of Shreveport, Louisiana, under the same firm name. After execution of the bond and the $1,500 purchase of cigarette stamps by McGuire, an audit of the business was made at the instance of Nielson in the latter part of August, 1949. According to McGuire, this audit showed there were then revenue stamps in the Texarkana office and the various vending machines in the amount of more than $1,300, and that most of these stamps had been attached to merchandise. Shortly thereafter McGuire and Nielson had some disagreement which apparently arose over business losses reflected by the audit. According to McGuire, Nielson declared his intention to notify the State Revenue Department that there would be a default on McGuire's bond in order to "cover up" a part of the business loss.

McGuire further stated that he notified appellee of Nielson's plans and that his lawyer notified the State Revenue Department. He then locked the doors of the business at Texarkana and had no further connection with the operation of the business. He also stated that a few days later Nielson "broke the lock on the doors of the business" and took possession thereof. McGuire also says that he locked up the business in order to preserve the records and enable the Revenue Department and the bonding company to make an immediate investigation, but it is not shown that either was requested to do so or that an investigation was ever made.

The law does not have the same solicitude for surety companies engaged in issuing indemnity bonds for a profit as it does for individual sureties who voluntarily undertake to answer for the obligations of others. Although calling themselves sureties, such companies are in fact insurers, and in determining their rights and liabilities the rule of *strictissimi juris,* which prevails as to a voluntary or accommodation surety, does not apply 50 Am. Jur., Suretyship, § 318. In *American Bonding Co.* v. *Morrow,* 80 Ark. 49, 96 S. W. 613, 117 Am. St. Rep 72, the court said: "It is now well settled that the bond of a surety company, like any other insurance policy, is to be most strongly construed against the insurer. The language of the bond is that selected and employed by the

insurer, and, when doubtful or ambiguous, must be given the strongest interpretation against the insurer which it will reasonably bear.'' See, also, *Federal Union Surety Co.* v. *McGuire,* 111 Ark. 373, 163 S. W. 1171; *U. S. Casualty Co.* v. *Johnston Drilling Co.,* 161 Ark. 158, 255 S. W. 890, 34 A. L. R. 727; *Union Indemnity Co.* v. *Forgey & Hanson,* 174 Ark. 1110, 298 S. W. 1032; *Trinity Universal Ins. Co.* v. *Willbanks,* 201 Ark. 386, 144 S. W. 2d 1092.

It is also the rule that a surety is liable, for the negligent acts of a principal, or employee, where the bond is so conditioned. ''Even though the bond does not use the term 'negligence,' but insures the faithful discharge of an employee's duties, it is held that if the employee, knowing the risk involved, fails to use such diligence in protecting property intrusted to his care as should be used by an ordinarily prudent person, the surety may be held liable for resulting loss.'' 50 Am. Jur., Suretyship, § 337.

Under the terms of the bond here involved, appellee agreed to pay the State the amount of any loss of taxes occasioned by any ''fraudulent, neglectful or dishonest act'' of McGuire. We agree with appellee's assertion that McGuire was not shown to be guilty of any act that was willfully fraudulent or dishonest which caused the State's loss in taxes. If, as McGuire stated, there were revenue stamps in the place of business at Texarkana and the vending machines operated at different places sufficient to cover the State's loss, this did not relieve McGuire of the duty to exercise ordinary diligence under the obligations of the bond. Just how the State would be expected to recover the tax stamps which had been attached to merchandise is not suggested by appellee. We think McGuire was clearly negligent in locking the doors of the business and abandoning it to a hostile partner, who had an equal right to possession, without making any effort to pay for the tax stamps furnished under the bond. Hence, appellee is liable under the bond for the loss occasioned by McGuire's ''neglectful'' acts.

The judgment of the circuit court is, therefore, reversed and the cause remanded with directions to enter judgment for appellant in the sum of $1,000.

WARD, J., dissents.

PAUL WARD, J., dissenting. I do not agree with the conclusion reached in the majority opinion. The statute under which appellee McGuire was appointed stamp deputy states that he shall be accountable to the Commissioner for "any wrongful acts." The bond executed by appellant says that he shall be liable to the Commissioner for any *careless acts*. Conceding without admitting that the wording of the bond is controlling there is still no testimony in the record upon which to hold appellant liable. A careful search of the records fails to disclose any *acts of carelessness* on the part of McGuire. All of the evidence on this point was furnished by McGuire himself. It appears to me that he did everything any reasonable person could have done to protect the Commissioner. When he discovered trouble was brewing in the partnership he immediately locked the doors of the place of business and reported the fact to all parties concerned. So far as the record shows the stamps were handled in the usual manner and in a manner known, or could easily have been known by the Commissioner. The question of construing the bond against the interest of the bonding company has no place in the opinion as there is no question about what the bond means—the only question involved is that of *carelessness*.