Gordon **FOSTER** and Patricia
Foster, Appellees,

v.

**NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PA, Appellant.**

Lloyd M. **PATTERSON**, Appellee,

v.

**NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PA, Appellant.**

Lloyd M. **PATTERSON**, Appellant,

v.

**NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PA, Appellee.**

Gordon **FOSTER** and Patricia
Foster, Appellants,

v.

**NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PA, Appellee.**

Nos. 89–1991, 89–2172 and 89–2173.

United States Court of Appeals,
Eighth Circuit.

Submitted March 12, 1990.

Decided May 7, 1990.

Rehearing and Rehearing En Banc
Denied July 11, 1990.

Bettina E. Brownstein, Little Rock, Ark., for National Union Fire Ins. Co.

Hermann Ivester, Little Rock, Ark., for Gordon and Patricia Foster.

Before FAGG, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Appellant National Union Fire Insurance Company ("National Union") appeals the district court's[1] denial of its summary judgment motion and the jury verdict in favor of the Appellees, Gordon and Patricia Foster and Lloyd Patterson. The verdict held National Union liable under a fidelity bond it sold to Brittenum and Associates ("B & A"), a brokerage firm in Little Rock, Arkansas, for losses sustained by the Fosters and Patterson due to the acts of Jon Brittenum, president of B & A. National Union asserts several points of error, all of which dispute the district court's reading of applicable Arkansas law. The Fosters and Patterson cross-appeal the denial of enhancement of the award of attorneys' fees. We affirm.

## I. BACKGROUND

The Fosters and Patterson had some $400,000 and $300,000, respectively, in securities with B & A. The Fosters and Patterson believed the securities were held by the firm of B & A, while National Union suggests that they were personally loaned to Jon Brittenum. In either case, the investments were allegedly (and later determined by jury verdict to be) lost due to fraudulent and dishonest acts of Jon Brittenum, the president and owner of B & A.[2] Pursuant to Arkansas law, B & A was covered by a fidelity bond written by National Union for, inter alia, loss due to the fraudulent or dishonest acts of an employee.

After the Securities Investor Protection Corporation (the "SIPC") determined that the Fosters and Patterson were not insured customers of B & A for purposes of SIPC insurance protection, the Fosters filed suit in April 1987 against National Union, while

---

1. The Honorable Elsijane T. Roy, Senior United States District Judge for the Eastern District of Arkansas.

2. Whether the Fosters and Patterson dealt with Jon Brittenum personally or in his capacity as president of B & A was not entirely clear to us and we made some inquiry about it during oral argument. National Union has not preserved an argument attacking the evidence on this point, and we will not review uncontested evidentiary findings on appeal. Obviously the district court concluded that the dealings were with Brittenum as president of B & A by concluding that liability could lie against National Union on the basis of the fidelity bond to B & A.

That is the state of the record as it has come to us. Nevertheless, each of the attorneys in this case has sent to the court a letter purportedly under Fed.R.App.P. 28(j) arguing the very point of whether Brittenum dealt personally or professionally with the Fosters and Patterson. All correspondence on this point was wrongly sent. Rule 28(j) is only to be used to provide the court with citations to supplemental authorities which have "come to the attention of a party after the party's brief has been filed, or after oral argument but before decision...." Fed.R.App.P. 28(j). The rule goes on to provide that any correspondence shall be made without argument. *See Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 349 (5th Cir.1989). Because the attorneys have made further argument, we need not consider any of the correspondence sent under Rule 28(j). *See id.; Clapp v. C.I.R.*, 875 F.2d 1396, 1401 n. 2 (9th Cir.1989); *United States v. Drefke*, 707 F.2d 978, 983 (8th Cir.), *cert. denied*, 464 U.S. 942, 104 S.Ct. 359, 78 L.Ed.2d 321 (1983); *but cf. Everett v. Franciscan Sisters Healthcare, Inc.*, 882 F.2d 1383, 1387 n. 11 (8th Cir.1989) (reference to 28(j) letter informing court of additional facts without discussion of court's use thereof).

We acknowledge that we asked the question that appears to have prompted the correspondence from the attorneys. However, any response to that question should have been based on the court record.

Patterson separately filed in July of that year, both in state court. The cases were removed to federal district court based on diversity and later consolidated for trial. The Fosters' and Patterson's complaints claimed coverage under the fidelity bond issued by National Union to B & A.

National Union moved for summary judgment on several grounds, arguing in part that because the fidelity bond expressly did not provide coverage to third parties the Fosters and Patterson lacked standing to sue. The district court denied the motion on the grounds that as a matter of public policy under Arkansas law the Fosters and Patterson had standing to sue on the bond, despite the bond's contrary language.

When the case went to trial, National Union again tried to use the language of the fidelity bond in its favor. National Union made a motion in limine requesting that any evidence that Brittenum intended to cause either B & A or third parties to sustain a loss be disallowed. National Union argued that its fidelity bond expressly covered only losses sustained by B & A. The district court denied National Union's motion on the ground that because it had already ruled that the Fosters and Patterson had standing to sue it would be inconsistent to limit the presentation of their case with respect to liability. That is, there would be no point to giving them standing to sue under the bond to recover only the losses of B & A and not their own losses. Actually, however, B & A is responsible for these losses and hence suffers those losses itself.

Finally, National Union objected to an instruction which allowed the jury to consider a loss to either B & A or third parties as the loss triggering coverage under the fidelity bond. Needless to say, the district court overruled the objection having already disposed of the matter by its decision on National Union's motion in limine. The jury returned a verdict in favor of the Fosters and Patterson. The Fosters and Patterson sought attorneys' fees under Arkansas law as well as an enhancement of those fees. The district court awarded fees, costs, and a 12% penalty, but declined to enhance the fees.

## II. DISCUSSION

Each of National Union's points for reversal—1) failure to grant its summary judgment motion for lack of standing, 2) denial of its motion in limine on evidence of losses by third parties, and 3) improper instruction, again on losses by third parties—ultimately disputes the district court's reading of Arkansas law that provided coverage to third parties under the fidelity bond as a matter of public policy. Thus, the primary issue on this appeal is whether the district court's view of Arkansas law can survive appellate review.

In our review we give deference to the interpretation of a state law made by a district court sitting in that state. *Cowens v. Siemens–Elema AB*, 837 F.2d 817, 823 (8th Cir.1988). We will not reverse the district court unless its analysis is "fundamentally deficient ..., without a reasonable basis, or contrary to a reported state-court opinion." *McCarthy Bros. Constr. Co. v. Pierce*, 832 F.2d 463, 467 (8th Cir. 1987) (quoting *Economy Fire & Cas. Co. v. Tri–State Ins. Co. of Minn.*, 827 F.2d 373, 375 (8th Cir.1987)). Bearing those standards in mind, we note that while there is not a decision interpreting the Arkansas statute in question by the Supreme Court of Arkansas, the district court judge is a former member of that court. Her judgment on the matter is due considerable weight.

We have not, however, failed to closely examine the matter ourselves. As a general rule, National Union's position is correct. A fidelity bond is not ordinarily liability insurance which covers third parties. *See Continental Corp. v. Aetna Cas. & Sur. Co.*, 892 F.2d 540, 543 (7th Cir.1989) (amended opinion on denial of rehearing); *Anderson v. Employers Ins. of Wausau*, 826 F.2d 777, 780 (8th Cir.1987) (interpreting Iowa law on bankers' blanket bond). There are numerous other federal and state court cases which could be cited to defend that rule. But not one of them has interpreted Arkansas law and the bond in question, or addressed the public policy issue that is apparent in this case.

Turning to the bond, we acknowledge that it expressly provides for coverage only

to the insured, B & A. The fidelity provision under which the Fosters and Patterson sued provides that:

> Dishonest or fraudulent acts as used in this Insuring Agreement shall mean only dishonest or fraudulent acts committed by such Employee with the manifest intent:
>
> (1) to cause the Insured to sustain such Loss; and
>
> (2) to obtain financial benefit for the Employee
>
> . . . .

Agreed Statement of Facts, Exhibit 1, Appellant's Addendum.

The plain language of the bond would neither allow suit by third parties nor cover their losses. But the language of the bond, however clear, cannot control where it is contrary to the law.

■ The statute in question is found at Ark.Code Ann. § 23–42–305.[3] There is no Arkansas case law interpreting the statute on the issue presented in this case. Relevant Arkansas case law used by the district court concerned actions on contracts by third parties where the contract was made for the benefit of a third party, insurance contracts contrary to public policy, and construction of insurance contracts against the insured.[4] Order Dated April 18, 1988, at 3–4, Appellant's Addendum. Applying the general principles from those cases, the district court said:

**3. 23–42–305. Corporate surety bonds—Alternatives.**

(a)(1) The commissioner shall require registered broker-dealers to post a corporate surety bond in the amount of one hundred thousand dollars ($100,000), registered investment advisers to post a corporate surety bond in the amount of fifty thousand dollars ($50,000), and an agent for the issuer to post a corporate surety bond in the amount of twenty-five thousand dollars ($25,000).

(2) In no event shall the total liability of the surety to all persons, cumulative or otherwise, exceed the amounts specified in the bond.

(3) Every bond shall provide that no suit may be maintained to enforce any liability on the bond unless brought within five (5) years after the sale or other act upon which it is based.

(4) Every bond shall provide for suit thereon by any person who has a cause of action under this chapter.

(b) However, in lieu of a corporate surety bond:

(1) A broker-dealer registered with the Securities and Exchange Commission, who is also a

[T]he Court is persuaded that it is clearly the public policy in Arkansas to protect the investing public. . . . [It] appears to be such a strong theme throughout the statutes and rules that when viewed in conjunction with the requirement that a broker/dealer maintain a bond that any limiting or exclusionary provisions of said bond which would not afford such protection to the public would be void as against public policy or disregarded.

*Id.* at 4–5, Appellant's Addendum.

We agree with the district court. Under § 23–42–305 a broker-dealer is required to post either (a) a corporate surety bond or (b) a fidelity bond. Subheading (a) at paragraph (4) provides that "Every bond shall provide for suit thereon by any person who has a cause of action under this chapter [§ 23–42–101 et seq., "Arkansas Securities Act"]." The district court had a reasonable basis to conclude that subheading (b) would also provide for suit by any person with a cause of action under the Arkansas Securities Act in order to effectuate the protection of the investing public.

National Union has pointed out that subheading (b) requires that a broker-dealer be a member of the National Association of Securities Dealers and the SIPC, which arguably provides for adequate protection to the investing public. The facts of this case, however, demonstrate just the oppo-

member of the National Association of Securities Dealers and a member of the Securities Investor Protection Corporation and whose agents are registered with the National Association of Securities Dealers, may maintain a fidelity bond covering each agent in a form substantially similar to the standard form of brokers' blanket bond promulgated by the Surety Association of America, in the following amounts:

. . . .

and covering, at least, fidelity on premises, in transit, misplacement, forgery and alteration including check forgery, securities loss including securities forgery, and fraudulent trading

. . . .

Ark.Code Ann. § 23–42–305 (1987).

4. The district court relied on *Aetna Ins. Co. v. Smith*, 263 Ark. 849, 568 S.W.2d 11 (1978) (policy terms may not be contrary to public policy); *Howell v. Worth James Constr. Co.*, 259 Ark. 627, 535 S.W.2d 826 (1976) (third party may sue on contract made for its benefit); *Morley v. McGuire*, 219 Ark. 206, 242 S.W.2d 112 (1951) (surety's bond is to be construed against surety).

site. Because the SIPC determined that the Fosters and Patterson were not covered by SIPC insurance, they would be afforded no protection if they could not sue on the fidelity bond. Thus, the intent of the Arkansas Securities Act to protect the investing public would be circumvented in this case if the district court's view of the law did not prevail.

We are not anxious to impose liability where arguably none existed, but National Union's bond must be read to conform with the public policy expressed by the laws of the state of Arkansas. The fidelity bond was one statutorily required and should be liberally interpreted to carry out the purposes of the statute, the protection of the investing public. *See First American State Bank v. Continental Ins. Co.*, 897 F.2d 319, 325 (8th Cir.1990) (bankers' fidelity bond under Iowa law). We believe that the district court's interpretation of the applicable Arkansas law is certainly not deficient in analysis and is reasonable. *McCarthy*, 832 F.2d at 467. We, therefore, affirm it in all respects on this issue.

The remaining question is one always near to the hearts of lawyers, the determination of fees. The Fosters and Patterson have appealed the district court's refusal to enhance the fees awarded in this case. They argue that the district court erred by applying a federal standard rather than a state standard in determining not to enhance the fees. We do not reach the question. We have reviewed the applicable law and conclude that the district court did not err by declining to enhance the award of fees under either standard.

III.  CONCLUSION

Giving due deference to the district court's view of the applicable Arkansas law and finding its interpretation to be reasonable and further finding no error in the proceedings or judgment of the district court, its judgment is in all respects affirmed.

WOLLMAN, Circuit Judge, dissents.